OPINION. ARNOLD, Judge: The petitioner contends that upon his payment on July 30,1941, of $31,372.44 to Robert Glendinning & Co., in settlement of his liability under the guaranty agreement, Gertrude Stackhouse became indebted to him in that amount, that she was insolvent during the last six months of 1941, and that he was therefore entitled to a deduction on account of a bad debt in computing his income tax liability for 1941. The petitioner first guaranteed the Glendinning account in 1930. In 1938 Gertrude Stackhouse opened a second brokerage account with Auchincloss, Parker & Redpath, which the petitioner also guaranteed. In 1939 the petitioner, by codicil to his will, directed that his executor should not seek reimbursement from her for any sum which the petitioner or his executor might be required to pay by reason of his guaranty of the Glendinning account. On July 8,1941, the petitioner, by another codicil, made similar provision as to both guaranteed accounts. On July 16, 1941, certain securities were delivered to Gertrude Stackhouse from the Glendinning account and on July 30, 1941, this account was closed and petitioner paid $31,372.44 to the brokers in settlement of the balance due. The petitioner testified that he thought Gertrude Stackhouse was at that time worth some eight or ten thousand dollars. She testified that she owned unpledged property worth about twelve thousand dollars. The petitioner relies upon the cases of Shiman v. Commissioner, 60 Fed. (2d) 65, and Alice DuPont Ortiz, 42 B. T. A. 173 (the appeal did not involve this issue), as controlling here. These cases are distinguishable from the present case in that in each of the cited cases the facts and circumstances show that a debtor-creditor relationship arose, while in the present case the evidence shows, to the contrary, that a gift was intended and consummated. The petitioner’s intention is evidenced by the following significant facts. First, the petitioner had already manifested his intention, as expressed in the codicil to his will, that if he made such a payment his executor was not to seek to recover it from Gertrude Stackhouse. Second, when he made the payment in controversy he had permitted her, only a few days before, to withdraw securities from the account to the value of $1,466.37, which necessarily increased the amount he was required to pay under his guaranty. Third, while he was aware that she had some eight or ten thousand dollars in assets not pledged, he made no move to reach these assets. Fourth, in the antenuptial agreement executed on November 13, 1941, six days before the marriage of the petitioner and Gertrude Stackhouse, after referring to the provision he had made for the establishment after his death of a trust fund of $400,000 for his prospective wife, to be in lieu and in bar of all rights she might have as his wife or widow, the petitioner relinquished all rights which he, as husband, surviving spouse, or in any other manner, might or could have in the property she then owned or might thereafter own, and agreed that her property should be free of any claims of the petitioner of whatsoever nature and howsoever arising. At the time of this agreement any debt that may have arisen from the petitioner’s payment was outstanding. By the ante-nuptial agreement the petitioner relinquished any right to subject her property to the payment of the account. This was a voluntary action on his part. He could have stipulated that this particular obligation should stand, but did not choose to do so. While the petitioner argues that this provision was not intended to apply to claims arising through an ordinary debtor and creditor relationship, there is no doubt that it would preclude a recovery of the claim here involved. The petitioner argues that the action of his wife in turning over to him the sum of $5,580 received by her upon closing the second brokerage account in 1943 showed that these parties recognized the existence of the debt. Since they had been married nearly two years at that time and many payments of various natures had necessarily passed between them, we can not say that this circumstance supports the petitioner’s contention. The petitioner’s wife received a salary after the marriage and had other income from securities, but there is no showing that the petitioner required her to pay over any of this income to apply on the alleged debt. Although the petitioner and his wife both said that on December 31, 1941, they considered the debt still owing, their conduct contradicts their statements. Considering the facts and circumstances of record, we are convinced that the petitioner intended to, and did, make a gift to his intended wife of the amount of the payment and that a debtor-creditor relationship did not arise between them as a result of it. Even assuming that a debtor-creditor relationship did arise upon the payment, the petitioner is not entitled to the deduction claimed, for he made no attempt, such as was made in the Ortiz case, supra, to effect recovery against his debtor, who admittedly had assets, and he voluntarily relinquished any right he may have had to do so. It is understandable that he would not wish to harass his intended wife by taking what properties she had, but where a taxpayer, because of the personal relations between himself and his debtor, is not willing to enforce payment of his debt, he is not entitled to deduct it as worthless. Thom v. Burnet, 55 Fed. (2d) 1039. The respondent did not err in disallowing the deduction. Decision will he entered for the respondent.