*Decisions will be entered under, Rule 50.*

M. D. Eagle, Jr., and Geraldine Eagle, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Marvin D. Eagle, Jr., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Geraldine Eagle, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 49587, 49588, 49589. Filed October 31, 1955.

*R. B. Cannon, Esq.*, for the petitioners.
*Allen T. Akin, Esq.*, and *S. B. Bradley, Esq.*, for the respondent.

## OPINION.

MURDOCK, *Judge:* Marvin concedes that he received large amounts of income in each year which he did not report and contests the deficiencies in only three respects. First, it is contended on Marvin's behalf that the opening inventory for 1944 was in excess of the $9,061.78 used by the Commissioner in determining the deficiency for that year. Marvin has not testified that the inventory in question was larger than the amount used by the Commissioner, determined as a result of information theretofore given by Marvin to representatives of the Commissioner. There is no worthwhile evidence in the record to show that Marvin is entitled to a larger opening inventory for 1944. No one who knew anything about his inventory at that time has testified on the subject. The argument is advanced on Marvin's behalf that the banks were not allowed to lend on cattle more than a certain percentage of the cost, and therefore the cost of the

cattle must have been substantially in excess of the amount of notes outstanding. Such an argument is not evidence, and the record as a whole does not justify a finding that the opening inventory for 1944 was any larger than the amount determined by the Commissioner.

The next attack upon the amount of the deficiencies is on the ground that some of the sales made by Marvin during the years 1945, 1947, and 1948 were of breeding cattle and the resulting gains were long-term capital gains of which only one-half is includible in computing taxable income. See sec. 117 (j) (1). The petitioners have the burden of proving that the animals sold were held for more than 6 months and were held primarily for breeding purposes and not for sale in the ordinary course of Marvin's business. Marvin testified that he had about 25 cows and 2 bulls which constituted a breeding herd during the taxable years, but there is no claim that he sold any of those animals. He sold 36 animals in March and April 1945 for $2,604.42. They consisted of cows and bulls which Marvin had raised. But the evidence does not show how long any of those animals was held by Marvin or that they were held primarily for breeding purposes. He sold 286 head of cattle on March 22, 1947. He had bought 286 heifers between October 16 and October 18, 1946, and if they were the cattle sold on March 22, 1947, he obviously did not hold them for as much as 6 months. True, he made a deposit on September 16, 1946, in connection with this purchase, but the evidence does not show that he thereby acquired title to any of the animals. Furthermore, evidence that he held the animals for breeding purposes would be necessary, and his statement, that he was "forced to sell breeding stock," standing alone is not sufficient for this purpose. He purchased 546 heifers and steers between October 27 and November 1, 1947, and from that lot he sold 174 animals on October 21, 1948. He testified that he bought those heifers to stock a breeding herd at his Colorado ranch, but there is no other evidence in the case from which it might be determined that the animals sold in 1948 were held primarily for breeding purposes and not primarily for sale to customers in the ordinary course of Marvin's trade or business. It is noted that an undisclosed number of those animals were steers, which could form no part of a breeding herd. The testimony of an accountant with no personal knowledge of the facts is not reliable or helpful. The evidence as a whole does not justify a finding that any of the animals involved in any of the contested sales of the taxable years represented capital assets held for more than 6 months.

The third and final attack made upon the amounts of the deficiencies as determined by the Commissioner is that the Commissioner erred in including in income for 1948 and 1949 any amounts representing income from the joint venture with Grandbush. Marvin claims that he did not get his investment back and obviously did not realize any

gain from the venture. The evidence on this point fails to sustain any part of this contention. Proceeds of the venture in large amounts must have been paid to Marvin, but he has made no effort to show how much. Grandbush testified that he was not certain that any money was owing to Marvin at the close of the transaction. Incidentally, it might be pointed out if any money was owing by Grandbush to Marvin there is no issue raised in this proceeding about such an amount constituting a bad debt in any taxable year and the evidence does not show that any such debt became worthless during the taxable years. Marvin has failed in his burden of proof on all three issues and the deficiencies must stand in the amounts determined by the Commissioner.

It is conceded that the assessment and collection of the deficiency and addition to the tax for 1944 are barred by the statute of limitations unless the joint return filed for that year was false and fraudulent with intent to evade tax. See sec. 276 (a). Likewise, the additions to the tax cannot stand unless it appears that a part of each deficiency was due to fraud with intent to evade tax. Sec. 293 (b). Here the Commissioner has the burden of proof and he must prove fraud in each instance by clear and convincing evidence. The parties have stipulated that sales of cattle and grain made by Marvin during the taxable years, involving large amounts and resulting in large profits, were not disclosed on the petitioners' returns, which are in evidence. Likewise, the amount of income reported and unreported for each year has been stipulated and some detail of portions thereof was also stipulated. Marvin attempts to avoid the responsibility for failing to report income in large amounts, which he now concedes should have been reported, by blaming it on his lawyer. The evidence as a whole, however, justifies the conclusions that Marvin did not supply his lawyer with sufficient information to enable the latter to make a proper return of his income for any year here in question and, further, that he failed to give the lawyer any information in regard to large amounts of his income. *E. M. Green*, 11 B. T. A. 278. Marvin was personally responsible for the omissions. *D. C. Clarke*, 22 B. T. A. 314. The admitted understatements set forth in the Findings of Fact, large in proportion to the amounts of income reported and consistent over the entire period of 5 years, support the Commissioner's determinations of fraud. Marvin's failure to keep books and records of his business transactions as required by law can be considered in this connection. The evidence shows that Marvin expended large amounts of cash in the purchase of various properties during the taxable years, amounts far in excess of the total net income which he was reporting. That cash was not borrowed, and its only apparent source was out of the income from his business transactions. *Frank M. Imburgia*, 22 T. C. 1002. Marvin, despite limited attendance at school, was in no

sense ignorant but had ample intelligence to realize fully that the income which he was reporting on his returns was only a small part of that which he should have reported in each taxable year. *D. C. Clarke, supra.* The evidence as a whole, in clear and convincing fashion, shows a pattern of deliberate omission of the larger part of his income for each taxable year. *Arlette Coat Co.,* 14 T. C. 751. Findings have been made, after consideration of the entire record, that the return for 1944 was false and fraudulent with intent to evade tax and that a part of each deficiency for each year was due to fraud with intent to evade tax.

*Decisions will be entered for the respondent.*