Joseph N. Romm and Helen K. Romm, Husband and Wife v. Commissioner.
Romm v. Commissioner
Docket No. 55682.
United States Tax Court
T.C. Memo 1956-104; 1956 Tax Ct. Memo LEXIS 194; 15 T.C.M. (CCH) 526; T.C.M. (RIA) 56104; April 30, 1956
*194 Where, over a period of years, the petitioner, an experienced businessman, omitted substantial amounts of income from his returns and offered no tenable explanation for his failure to report such income, held, the respondent has established by clear and convincing evidence that a part of the deficiency for each of the years involved was due to fraud with intent to evade tax within the meaning of section 293(b) of the 1939 Internal Revenue Code; held, further, that the 50 per cent addition for fraud is to be computed for 1946 without reducing the deficiency for that year by the amount of a payment voluntarily made by the petitioner; held, further, certain assets held in the name of petitioner's wife were properly included by the respondent in his computations of the petitioner's net worth. Warren W. Grimes, Esq., for the petitioners. William Schwerdtfeger, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income taxes and penalties for the years 1942 to 1946, inclusive, as follows: 50 Per Cent
Year
Deficiency
Addition to Tax
1942
$ 2,159.56
$ 1,079.78
1943
2,211.52
1,105.76
1944
16,321.23
8,160.61
1945
17,098.79
8,549.39
1946
9,582.49
12,187.80
The issues are (1) whether any part of the *196 deficiencies for the several years was due to fraud with the intent to evade tax within the meaning of section 293(b) of the 1939 Internal Revenue Code; (2) whether certain United States savings bonds and year-end balances in the name of Helen K. Romm were properly included in the net worth analysis of Joseph N. Romm; (3) whether the statute of limitations bars the assessment of deficiencies for the years 1942 to 1945, inclusive; (4) whether the amount of $821.84 voluntarily paid in 1954 by Joseph N. Romm as a "negligence penalty" to apply to the year 1946 should be credited to the deficiency computed for that year or whether it should be credited to the 50 per cent addition for fraud determined by the respondent for 1946; and (5) whether the 50 per cent addition for fraud for 1946 should be based on the deficiency as determined for that year before crediting such deficiency with the voluntary payment, in the amount of $16,436.79, made by Joseph N. Romm in 1954 to apply to the year 1946. Findings of Fact Some of the facts have been stipulated and they are found accordingly. Joseph N. and Helen K. Romm, husband and wife, were residents of Takoma Park, Maryland. Joseph N. Romm *197 (hereinafter called the "petitioner") filed separate individual income tax returns for years 1942 to 1946, inclusive, with the then collector of internal revenue at Baltimore, Maryland. Petitioner's wife, Helen, filed no returns for any of the years involved. Petitioner was in the business of selling merchandise, principally sporting goods, at retail in the Washington metropolitan area under the trade name of Mt. Vernon Cycle and Sport Shop, a sole proprietorship. Bicycle repair and service facilities were also provided at the stores operated by the petitioner. From 1935 to 1948, petitioner operated a public bicycle concession in Potomac Park under contract with the National Park Service. Petitioner also had an interest during the years here involved in the Riverside Bicycle Academy (hereinafter called the "Academy"), a bicycle rental business for which he furnished the bicycles and other equipment. The Academy was managed by Harold E. Smith, who was replaced by James Butler for a period when Smith was in the Armed Forces. Weekly receipts during the rental season (from April to October) were turned over to petitioner or one of his employees with a written statement of the week's *198 operations. Smith received no compensation until the end of the season when 30 per cent of the net profits were paid to him, the balance going to the petitioner. Net profits were determined by subtracting from gross receipts all expenses of the Academy, including the cost of repair parts and the rent for the Academy paid by the petitioner during the winter months. Depreciation for the bicycles was taken by petitioner in his return. Petitioner did not report any of the income from the Academy in his returns for the years 1942 to 1946, inclusive. Net profits in 1943 from the Academy amounted to $6,724.67, of which Smith's share was $2,017.40, and the balance of $4,707.27 going to the petitioner. In 1944 Smith's share of the net profits was $806.96, indicating that the petitioner received $1,882.91. In 1945 the net profit from the Academy was $3,371, of which 30 per cent was $1,011.30 ($404.52 paid to Smith and $606.78 paid to Butler), leaving $2,359.70 for the petitioner. Similarly, the petitioner received his portion of the net profits in 1942 and 1946 from the operations of the Academy. Petitioner received as his share of the net profits in each of these two years approximately $2,000. *199 Petitioner reported no income on his returns for 1942 to 1946, inclusive, from the operations of the Academy. During the years 1943 to 1946, inclusive, petitioner received substantial income from rental property. From 1943 until after the end of 1946 the petitioner's accounts were kept by Robert S. McMillan. Up to July 1946, McMillan worked on a part-time basis, mostly at night, and from July 1946 he worked on a full-time basis, being in charge of the books, records, and office work, and occasionally helping in sales and in taking inventory. The parties agree it was appropriate for the respondent to use the net worth plus personal living expenses method to determine the petitioner's net income for the years 1942 to 1946, inclusive. It was also stipulated that all of the amounts used in the net worth analysis were correct. Petitioner contended the wife's assets should not be included but stipulated the amounts of said assets were correct. The wife's assets, as stipulated, were: December 31
Assets
1941
1942
1943
1944
1945
1946 lU.S. savings bonds
$ 712.50
$2,537.50
$3,287.50
$4,075.00
$4,562.50
$4,637.50
Suburban Bank
339.30
127.10
208.75
252.46
476.38
648.67
Columbia Fed. S. & L. Ass'n
159.50
23.38
199.57
1,500.90
1,787.10
2,241.41
National Permanent B. & L.
Ass'n (No. R-592)
488.06
459.06
1,236.21
303.26
315.46
327.37
National Permanent B. & L.
Ass'n (No. R-714)
161.70
508.05
868.50
1,211.99
Lincoln National Bank
559.59
5.45
Totals
$2,258.95
$3,152.49
$5,093.73
$6,639.67
$8,009.94
$9,066.94
*200 The net worth analysis, as stipulated, omitting the above assets, was as follows: December 31
Assets
1941
1942
1943
1944
1945
1946
City Bank - Mt. Vernon acc't
$ 8,215.21
$13,064.49
$ 6,033.12
$ 25,556.88
$ 41,607.82
$ 53,390.98
Columbia Fed. S. & L. Ass'n
acc't
811.42
City Bank - Gus Romm acc't
8.32
1,193.61
3,061.44
1,494.01
1,879.38
159.47
Automobile
1,480.00
1,480.00
1,480.00
1,480.00
1,480.00
1,480.00
U.S. savings bonds
1,325.00
3,500.00
3,500.00
3,500.00
3,500.00
Bank of Ocean City - special
39.30
39.30
549.75
Bank of Ocean City - regular
151.98
172.96
1,776.61
777.29
2,053.96
316.72
6613 Eastern Avenue
4,750.00
4,750.00
4,750.00
4,750.00
4,750.00
4,750.00
6617 Eastern Avenue
3,700.00
3,700.00
3,700.00
3,700.00
3,700.00
933 G Street
45,000.00
45,000.00
45,000.00
45,000.00
5019 Wisconsin Avenue
15,000.00
15,000.00
15,000.00
924 G Place
10,000.00
10,000.00
Garage
6,779.21
Two Ocean City lots and
summer home
8,000.00
8,000.00
8,000.00
8,000.00
8,000.00
Another Ocean City lot
1,600.00
1,600.00
1,600.00
1,600.00
1,600.00
1,600.00
Another summer home
27,326.97
Furniture and fixtures
$ $ $ $ $ 401.50
$ 401.50
Inventories
28,860.32
27,180.10
18,824.69
15,261.84
20,883.81
50,200.87
Bicycles (one lot)
2,519.00
Bicycles (another lot)
12,665.00
12,665.00
12,665.00
12,665.00
12,665.00
12,665.00
Equipment
867.00
867.00
867.00
City Bank - rental acc't
482.92
714.09
3,578.48
1,122.19
Total assets
$65,770.13
$75,170.46
$110,873.78
$140,366.11
$176,966.95
$242,140.08
Liabilities
Reserve for depreciation
$13,035.00
$13,405.00
$13,938.39
$15,104.14
$15,940.04
$17,303.52
City Bank loan
7,070.78
Bank of Ocean City loans
500.00
1,000.00
City Bank - second loan
10,000.00
City Bank - third loan
4,000.00
Mortgage on 933 G Street
26,591.67
17,482.45
4,993.47
Mortgage on 5019 Wisconsin Ave.
8,968.10
7,683.61
6,346.75
Accounts payable
2,664.62
5,937.24
5,633.50
15,132.29
34,189.97
Total liabilities
$13,535.00
$16,069.62
$46,467.30
$47,188.19
$53,749.41
$69,911.02
Net worth
$52,235.13
$59,100.84
$64,406.48
$93,177.92
$123,217.54
$172,229.06
Less prior year's net worth
52,235.13
59,100.84
64,406.48
93,177.92
123,217.54
Increase in net worth
$ 6,865.71
$ 5,305.64
$28,771.44
$30,039.62
$49,011.52
Federal income tax paid
453.78
972.84
1,589.64
2,620.00
1,332.72
Household expenses
5,200.00
5,200.00
5,200.00
5,200.00
5,200.00
Less: Allowable deductions
(467.29)
(1,043.48)
(925.31)
(1,330.62)
(990.62)
Totals
$12,052.20
$10,435.00
$34,635.77
$36,529.00
$54,553.62
*201 Petitioner's wife, Helen, brought with her $4,000 when she came to this country in 1914. She married the petitioner in 1916. From 1914 to 1921 she worked at various jobs, earning six to eight dollars per week. In the early thirties petitioner went through bankruptcy, and from 1932 through 1941 he filed no returns in some years and in others he paid small amounts of income tax. In 1934 the petitioner purchased a residence for himself and his wife for $4,750. On December 31, 1941, the petitioner's wife had assets in the amount of $2,258.95. During the years 1942 to 1946, inclusive, she acquired with funds obtained from the petitioner U.S. savings bonds and accounts in several banks. An account in the National Permanent B. & L. Association (No. R-714), which was in the wife's name, represents savings of the petitioner's daughter. The respondent was correct in using the wife's year-end balances for the years 1942 to 1946, inclusive, in determining petitioner's net worth for said years with the exception of the account in the National Permanent B. & L. Association (No. R-714), which account really belonged to their daughter. On or about the dates set forth below, the petitioner submitted *202 net worth statements to the City Bank of Washington, D.C. for credit purposes. The amounts of the net worth indicated on such statements were as follows: Date
Net Worth
November 7, 1941
$ 41,341.83
October 31, 1942
41,341.83
January 1, 1944
60,054.56
September 26, 1945
166,565.24
December 31, 1946
266,697.84
In these statements submitted to the bank real estate was listed, in some instances, at estimated fair market value, instead of cost. If the cost figures were used consistently in the net worth statements they would show the following net worth amounts and the increases in net worth in each year. Date
Net Worth
November 7, 1941
$ 37,091.83
October 31, 1942
55,804.56
January 1, 1944
86,692.03
September 26, 1945
127,615.24
December 31, 1946
198,854.02
Petitioner aided McMillan, the bookkeeper in the preparation of the net worth statements, applying estimates of the fair market value of various parcels of real estate owned by him. Petitioner discussed these statements with the president of the City Bank. Petitioner reported the following amounts of net income in his returns filed for the years 1942 to 1946, inclusive: 1942
$ 6,206.98
1943
6,195.30
1944
6,044.41
1945
7,523.40
1946
11,655.92
*203 The returns, prepared by McMillan from the books and records maintained by him, were prepared in detail, with deductions, expenses, and income items set out in odd amounts. The petitioner assisted McMillan in preparing the returns for each of the years here involved, and the petitioner was aware of the income reported in each of the annual returns. On August 11, 1954, prior to the issuance of the deficiency notice, the petitioner made a payment of $24,572.04 to the district director of Internal Revenue at Baltimore. Maryland, to apply to the income tax for the year 1946. On the receipt issued by the director's office, $16,436.79 was shown as applicable toward a deficiency in income tax for 1946, $7,303.41 as interest, and $821.84 as a "5% penalty." Petitioner sustained a net operating loss of $6,974.34 in 1948, and it has been conceded by the respondent that this amount is to be allowed as a carry-back to the year 1946. Effect shall be given to this adjustment in petitioner's income tax deficiency for 1946 in the Rule 50 computation. A part of the deficiency in petitioner's income taxes for each of the years 1942 to 1946, inclusive, was due to fraud with intent to evade tax. *204 In each of the years here involved, 1942 to 1946, inclusive, the petitioner filed fraudulent returns with the intent to evade tax. Opinion MULRONEY, Judge: The petitioner argues that the years 1942 to 1945, inclusive, are barred by the statute of limitations. Where a taxpayer files a false or fraudulent return with intent to evade tax a proceeding in court may be commenced at any time to collect whatever taxes are due. Section 276(a) of the 1939 Internal Revenue Code. Respondent has determined the 50 per cent addition for fraud in addition to deficiencies in petitioner's income tax for the years 1942 to 1946, inclusive. Section 293(b) of the 1939 Internal Revenue Code provides for a 50 per cent addition to the tax where any part of the deficiency of any year is due to fraud with intent to evade tax. The respondent has the burden of proof on fraud and he must prove fraud in each instance by evidence which is clear and convincing. It was necessary for the respondent to compute unreported amounts of income in the years involved by the net worth plus personal living expenditures method, and the petitioner agrees that this was justified in this case. However, petitioner does argue *205 that the respondent was not justified in including in the net worth computations certain assets standing in the name of the petitioner's wife. We shall treat this issue later in the opinion. A comparison of the amounts of net income reported by the petitioner in his returns for the years involved and the amounts of net income as determined by the net worth analysis reveals substantial understatements. Petitioner reported net income of $6,206.98 in 1942, $6,195.30 in 1943, $6,044.41 in 1944, $7,523.40 in 1945, and $11,655.92 in 1946, while the net worth analysis (not including assets in the name of the petitioner's wife) shows net income for those years of $12,052.20, $10,435.00, $34,635.77, $36,529.00, and $54,553.62, respectively. Large understatements of income which appear consistently over a period of years are evidence of fraud. M. D. Eagle, Jr., 25 T.C. 169 (filed October 31, 1955); Arlette Coat Co., 14 T.C. 751. Petitioner was an experienced businessman who, in spite of his meager schooling, was able to build a substantial business over the years. He purchased several pieces of real estate in the years 1942 to 1945, and in 1946 he made substantial *206 improvements to real estate owned by him and he also built a summer home at a cost of $27,326.97. Especially significant is the fact that a mortgage of $27,500, in connection with the purchase in 1943 of real estate at a cost of $45,000 was completely paid off by 1946. The evidence shows that a substantial portion of this was paid in cash, and the only apparent source of this cash was out of petitioner's business income. Petitioner maintained a checking account to be used primarily in his business, and the year-end balances in this account went from $8,215.21 on December 31, 1941, to $53,390.98 on December 31, 1946. This represented an increase of $45,175.77, and during the same period the petitioner reported net income of only $37,626.01. Evidence of the petitioner's awareness of the marked increases in his net worth over these years appears in the net worth statements filed by him with a bank in establishing credit. There is a substantial difference between the net worth amounts submitted in these statements and the amounts of net income reported by the petitioner in the corresponding year. Petitioner discussed these statements with the bank officers and it is clear that he was well *207 cognizant of the information contained in them. We do not believe that the petitioner was unaware that his actual income in each of the years involved was substantially greater than the amounts reported by him. Petitioner received income from the Riverside Bicycle Academy during the years 1942 to 1946, inclusive, and none of this income was ever reported by him in his returns for those years. His explanation of these omissions was it had been agreed that the manager of the Academy, Smith, was to pay petitioner's tax on such income. Smith denied the existence of any such agreement. We do not believe that such an agreement existed and we consider the omissions in each of the years here involved as still another manifestation of fraudulent intent. Furthermore, the petitioner could not escape his duty to report his share of that income. Petitioner offers no tenable explanation for his failure to report these substantial amounts of income in the years involved here. Arlette Coat Co., supra. Some of his explanations are vague and lack coherence. He attempts to blame faulty accounts kept by his bookkeeper for the discrepancies but we are wholly unpersuaded that the bookkeeping *208 methods, though admittedly loose, explain the substantial gap between the income earned from petitioner's business and the income reported by him in each of the years before us. Moreover, the petitioner was intelligent enough to realize clearly that he was reporting only a fraction of the income properly reportable in each taxable year. A careful examination of all the evidence and the record as a whole reveals in a clear and convincing manner that the petitioner deliberately omitted the large part of his income from his returns for each of the taxable years here involved. M. D. Eagle, Jr. supra. We hold that the returns filed by the petitioner for the years 1942 to 1945, inclusive, were fraudulent with intent to evade tax and consequently, under section 276(a) of the 1939 Code, the statute of limitations does not bar assessment of tax for those years. We hold also that part of the deficiency for the years 1942 to 1946, inclusive, was due to fraud with intent to evade tax. The respondent included in the petitioner's net worth analysis certain assets held in the name of petitioner's wife. The argument for this is that such assets were acquired with income earned by *209 the petitioner in his business operations during the years involved here. Petitioner contends that his wife had $4,000 before they were married in 1916, and that this fund, together with savings from meager wages from 1914 to 1921 and money received from her daughter and son-in-law, was the source of the assets in her name. However, there is evidence that petitioner went through a bankruptcy in the early 1930s, and it also appears that in several of the years, 1932 through 1942, he did not file returns or paid a small tax when returns were filed. Moreover, it appears that the petitioner purchased a residence in 1934 for $4,750. All this would indicate that inroads were made on any funds belonging to petitioner's wife over these years. On December 31, 1941, assets in the amount of $2,258.95 were in the name of the wife, and we believe this adequately covers whatever remained from the early years of the funds originating with her. We believe that the balances in the account in the wife's name at the National Permanent Building and Loan Association, number R-714, represent savings of petitioner's daughter and cannot be attributed to the petitioner. Nor do we believe that the proceeds *210 of the endowment policy deposited in the wife's account in 1944 should be attributed to the petitioner in their entirety. See Regulations 111, Sec. 29.22(b)(2)-1. With the exceptions noted, we are persuaded that the assets in the wife's name are attributable to income earned by the petitioner in the years involved here and should therefore be included in the net worth computations. There is no merit in petitioner's argument that the 50 per cent addition for fraud cannot be applied to the entire deficiency for 1946 where a part of the tax had been paid prior to the deficiency notice. George M. Still, Inc., 19 T.C. 1072, affd. per curiam, 218 Fed. (2d) 639; Arlette Coat Co., supra; Aaron Hirschman, 12 T.C. 1223. We hold that the fraud addition should be computed upon the whole deficiency computed for 1946, without reducing such deficiency by the amount which was paid by the petitioner, voluntarily, toward his 1946 tax liability. Petitioner apparently has abandoned his claim for a loss from a purported store robbery in 1946. There was no evidence introduced to discharge the petitioner's burden of proof on this point, and we hold *211 that such loss is disallowed. It has been stipulated that the petitioner sustained a net operating loss in 1948 of $6,974.34, and that such amount is to be allowed as a carry-back to 1946. Section 122(b)(1) of the 1939 Internal Revenue Code. There is some indication in petitioner's brief that he is arguing the carry-back is to be used to reduce the deficiency in 1946 before the 50 per cent addition for fraud. There is no merit in this argument. The 50 per cent addition is to be added before any reduction on account of the carry-back. Auerbach Shoe Co., 21 T.C. 191, affd. 216 Fed. (2d) 693; P. C. Petterson, 19 T.C. 486; Nick v. Dunlap, 185 Fed. (2d) 674, certiorari denied 341 U.S. 926. Decision will be entered under Rule 50.