JOHN C. AND RUTH ANNE KELLY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
KELLY v. COMMISSIONER
Docket No. 11603-91
United States Tax Court
T.C. Memo 1992-452; 1992 Tax Ct. Memo LEXIS 468; 64 T.C.M. (CCH) 435; August 10, 1992, Filed Decision will be entered for respondent. For Petitioners: Brian C. Kelly. For Respondent: Fred Green. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a $ 12,913 deficiency in petitioners' Federal income tax for 1984. At issue is whether petitioners are entitled to a bad debt deduction pursuant to section 166[1] in the amount of $ 94,403 for 1984. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. John C. and Ruth Anne Kelly (petitioners) resided in Reno, Nevada, at the time they filed their petition in this case. In 1984 John C. Kelly (Dr. Kelly) practiced medicine as a family practitioner in Reno, Nevada. In addition to his medical *469 practice, he was an officer and/or director of several corporations, including American Solar King (ASK), Sierra Microsystems, and Kellwynn. Many of Dr. Kelly's physician friends and business associates invested in these companies. One of his longtime physician friends was Dr. William Ford (Dr. Ford), who had been an orthopedic surgeon in the Reno community since 1979. Dr. Ford was divorced in 1983 or 1984. He lost his house and the custody of his children. At that time his practice was declining and he was forced to move from his office into a subsidized office at a family hospital. On October 26, 1983, Dr. Kelly and Dr. Ford entered into an agreement whereby Dr. Kelly guaranteed Dr. Ford's margin account held with Birr, Wilson and Co. The account was guaranteed with 30,230 shares of petitioners' zero basis ASK founder's stock. At the time of the agreement, the value of Dr. Ford's account was approximately $ 180,000. In 1984, as the value of Dr. Ford's account decreased along with the market value of the ASK stock, the margin was periodically called by Birr, Wilson and Co. Pursuant to the agreement, Birr, Wilson and Co. sold 23,130 shares of ASK stock owned by petitioners. *470 The sale of the ASK stock over a period of several months in 1984 resulted in $ 96,562.50 of the proceeds being used to satisfy losses in the margin account guaranteed by Dr. Kelly. Birr, Wilson and Co. deducted $ 2,159.50 from the $ 96,562.50 as commission for the transactions. At the conclusion of these calls in 1984, Dr. Kelly closed the account. Dr. Kelly met with Dr. Ford and requested payment of the debt. Mrs. Kelly never discussed the debt with Dr. Ford, but called Harry Holman, an account executive with Birr, Wilson and Co., to express her concern about it. Because of Dr. Ford's failure to repay the amount extended under the agreement, petitioners claimed a nonbusiness bad debt deduction on their 1984 Federal income tax return in the amount of $ 94,403.00 ($ 96,562.50 for the sale of ASK stock less the $ 2,159.50 commission). In the notice of deficiency respondent disallowed petitioners' claimed bad debt deduction because they failed to establish that the debt became worthless in 1984. OPINION Petitioners contend that they are entitled to a business bad debt deduction because Dr. Kelly was in the business of starting up companies and the debt at issue arose out of *471 such business activity. Alternatively, they contend that the debt was a nonbusiness bad debt and therefore they are entitled to a deduction as a short-term capital loss, as reported on their 1984 Federal income tax return. Petitioners further argue, alternatively, that they made a gift of stock for Dr. Ford's benefit which had a zero basis and, consequently, they overstated their capital gain by $ 96,562.50. Respondent contends that Dr. Ford's debt to petitioners did not become worthless during 1984, and, as a result, is not deductible in that year. We agree with respondent. The threshold question here is whether the debt became worthless in 1984. If not, then we need not decide whether it was a business or nonbusiness bad debt. Section 166(a) (1) allows a deduction for "any debt which becomes worthless within the taxable year." Worthlessness, in a particular year, is a question of fact which the taxpayer has the burden of proving by a preponderance of the evidence. Rule 142(a); Eagle v. Commissioner, 242 F.2d 635, 637 (5th Cir. 1957), revg. and remanding on another issue 25 T.C. 169 (1955); Redman v. Commissioner, 155 F.2d 319, 320 (1st Cir. 1946), *472 affg. a Memorandum Opinion of this Court dated May 15, 1945. The determination of worthlessness depends upon the particular facts and circumstances of the case. Crown v. Commissioner, 77 T.C. 582, 598 (1981); Dallmeyer v. Commissioner, 14 T.C. 1282, 1291 (1950). The evidence of worthlessness upon which petitioners rely is tenuous at best. The record reveals no indication of worthlessness in 1984. Petitioners rely heavily on the fact that Dr. Ford had been through a difficult divorce in which he lost his house and the custody of his children to prove the worthlessness of the debt. Generally, the year of worthlessness must be fixed by identifiable events which form the basis of reasonable grounds for abandoning any hope of recovery. Crown v. Commissioner, supra; Estate of Pachella v. Commissioner, 37 T.C. 347, 353 (1961), affd. per curiam 310 F.2d 815 (3d Cir. 1962). Dr. Kelly testified that he was unaware of the year of Dr. Ford's divorce. In any event, Dr. Ford's divorce does not establish a fixed identifiable event of worthlessness in 1984. Petitioners also rely on Dr. Ford's *473 poor financial situation as proof that the debt became worthless during 1984. Dr. Ford was forced to move out of his office space. He then moved into a subsidized office environment at a family hospital, out of which he carried on his orthopedic surgery practice. The only evidence regarding Dr. Ford's financial situation is Dr. Kelly's own testimony that Dr. Ford's practice was "going downhill very rapidly" due to the divorce. There is no evidence of Dr. Ford's income as an orthopedic surgeon or any other income he may have received in 1984. The test for worthlessness is objective, not subjective. Redman v. Commissioner, supra.Petitioners' belief that Dr. Ford was unable to pay the debt was based on subjective emotional and personal concerns rather than the objective view of Dr. Ford's financial ability to pay. Dr. Kelly's unsupported, self-serving testimony is insufficient evidence because it is only a reflection of his subjective judgment. See Geiger v. Commissioner, 440 F.2d 688, 689 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159. The record is devoid of any evidence that Dr. Ford was incapable of paying *474 his debt, such as insolvency, lack of assets, or bankruptcy. Hence, petitioners' reliance upon Dr. Ford's poor financial situation is unfounded. In addition, petitioners' failure to undertake any reasonable collection efforts reflects unfavorably on their allegation of worthlessness in 1984. Their attempts to collect from Dr. Ford consisted of meeting with him and requesting him to pay. They made no written demand and did not try to work out any deferred payment arrangement. Mere belief by a taxpayer that the debt is worthless is insufficient to support a claimed bad debt deduction. Fox v. Commissioner, 50 T.C. 813, 822 (1968), affd. per curiam 25 AFTR 891, 70-1 USTC par. 9373 (9th Cir. 1970). Since the doctors were friends, Dr. Kelly was more concerned with the stability and well-being of Dr. Ford's personal life than attempting to collect the debt. When a taxpayer, because of a personal relationship with the debtor, is not willing to enforce payment of his debt, he is not entitled to deduct it as worthless. Matthews v. Commissioner, 8 T.C. 1313, 1319 (1947). Mere nonpayment of a debt does not prove its *475 worthlessness, and petitioners' failure to take reasonable steps to enforce collection, despite the nature for such failure, does not justify a bad debt deduction unless there is proof that collection efforts would be futile. See New York Water Service Corp. v. Commissioner, 12 T.C. 780, 792 (1949). No evidence has been presented to show that collection efforts would have been futile. Petitioners simply chose not to pursue collection in 1984. Their belief that the debt was worthless and their choice not to pursue reasonable collection efforts are not sufficient to establish worthlessness. Accordingly, we hold that petitioners have failed to prove that the debt which Dr. Ford owed them became worthless in 1984. Therefore, they are not entitled to a bad debt deduction in that year. It may well be that the debt became worthless in a subsequent year, but we need not, and do not, decide that matter. Because petitioners failed to sustain their burden of proof on the worthlessness issue, it is not necessary for us to decide whether the debt was a business or nonbusiness bad debt. And we reject as unsubstantiated and without merit petitioners' contention that *476 they made a gift of stock for Dr. Ford's benefit. In view of the foregoing, Decision will be entered for respondent. Footnotes
1. Unless indicated otherwise, all section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩