Marvin D. EAGLE, Jr. and Geraldine Eagle, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16079.

United States Court of Appeals
Fifth Circuit.

April 2, 1957.

R. B. Cannon, Fort Worth, Tex., for petitioner.

C. Guy Tadlock, Walter Akerman, Jr., Robert N. Anderson, Lee A. Jackson, Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., John Potts Barnes, Chief Counsel, Int. Rev. Service, Rollin H. Transue, Sp. Atty., Internal Revenue Service, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

Marvin and Geraldine Eagle, husband and wife, petition for a review of a decision of the Tax Court [1] sustaining the Commissioner's findings that, for the years 1944 through 1948, petitioners had failed to report substantial income, derived principally from the sale of cattle. The aggregate income tax deficiency assessed amounted to $50,546.73, in addition to total civil fraud penalties of $19,-

---

1. 25 T.C. 169.

479.53 assessed under 26 U.S.C.A. § 293 (b), Code 1939, upon the determination that the deficiencies were due to fraud with intent to evade tax for each of the years in question.[2] The questions necessary for consideration are whether the petitioners, hereafter referred to as Eagle or petitioner, have sustained their burden of overcoming the presumed correctness of the Commissioner's deficiency assessments and whether sufficient relevant evidence, under the peculiar circumstances here, sustains the findings of fraud.

During the years in question Eagle, a resident of Panhandle, Texas, was engaged principally in the cattle business, buying and selling some stock and raising a little stock for sale from cattle he already owned January 1, 1944. All financial arrangements for the purchase of cattle were transacted by Eagle through loan accounts at two banks. Eagle applied a substantial part of his receipts directly to the payment of these loans, resulting in these receipts never going through his checking account. He maintained no books or records for the years in question from which his income could adequately be determined or from which income tax returns could be properly prepared.

Eagle and a co-adventurer, Grandbush, entered into a sheep-raising venture in June, 1948, in which Grandbush was to furnish the pasture and Eagle the sheep. Eagle invested a total of $35,000 in this venture. For the years 1948 and 1949, the latter year winding up the venture, the Commissioner included a total of $3,498.78 in Eagle's income as his share of the profit from the venture.

Eagle engaged a local attorney, now deceased, who held himself out as competent and qualified and who had been the attorney for Marvin Eagle, Sr. and prepared his tax returns for many years, to prepare his returns for all the years in question. For the preparation of the returns Eagle furnished the attorney with his bank statements, cancelled checks and deposit slips and all other data or records that were requested of him. Depending upon his attorney, Eagle never questioned the accuracy of the returns prepared for him and his wife, and signed the returns and checks for payment of the tax as prepared by the attorney.

The Commissioner, in determining the deficiencies, computed Eagle's income from bank deposit slips and statements pertaining to Eagle's checking account, the bank's customer liability ledgers which showed Eagle's various loans and payments thereon, and by verifying Eagle's sales and purchases with the persons with whom he dealt.

The stipulations of the parties show that Eagle received large amounts of unreported income. The tax deficiencies, together with the fraud penalties as found by the Commissioner, were sustained by the Tax Court against Eagle's contentions that the amount of the deficiencies for the years 1945, 1947 and 1948 were excessive as some of the cattle sales during these years were of breeding cattle held for a period greater than six months, thus the resulting gains were long-term capital gains of which only one-half is includable in computing taxable income under 26 U.S.C.A. § 117 (j) (1), Code 1939; and that the Commissioner erred in including in income for 1948 and 1949[3] any amount representing income from the sheep venture with Grandbush as he did not get any of the "paper profits" that Grandbush's books showed, and lacked $3,500 in recouping his investment, both debts becoming worthless and uncollectible in 1949.

Substantially the same argument is urged here regarding the contention that income from the sale of some

2. No fraud penalty was assessed against Geraldine Eagle for 1947 since she filed a separate return for that year on a community property basis. Joint returns were filed for each of the other years.

3. Eagle sustained a net operating loss for the year 1949. Any income would, of course, reduce that loss, thus reducing his net operating loss carry-back to 1947.

cattle during 1945, 1947 and 1948 resulted in a long-term capital gain. The Tax Court determined that Eagle had failed to establish, in some instances, how long the cattle sold were held and, in others, that they were held for breeding purposes. Furthermore, it stated that the testimony of an accountant with no personal knowledge of the facts underlying his computations could not be relied upon and was of no help in supporting Eagle's contentions.

The burden is on the taxpayer to overcome the findings of the Commissioner, which are presumed to be correct. Marshall v. Commissioner of Internal Revenue, 5 Cir., 1957, 240 F.2d 185, and cases there cited. Alluding only to the uncorroborated testimony of Eagle, relied on below, and the accountant's computations, but without pointing out wherein the Tax Court was in error, Eagle asks us to reach an opposite decision from that of the Tax Court. A careful survey of the evidence on this point leads us to the conclusion that the Tax Court was right and that Eagle has not established the elements necessary to entitle him to a long-term capital gain from the sale of cattle.

■ Relying on the testimony of Grandbush that Eagle did not get his part of the "paper profits" in 1948 and lacked about $3,500 of getting back his investment in the sheep venture, both of which, according to testimony, Eagle was unable to collect from Grandbush in 1949, Eagle asks us to hold here that he sustained a bad debt deduction for 1949 substantially equivalent to the sum of these items.[4] The Tax Court held that the evidence failed to establish any part of this contention. We agree. The question of the worthlessness of the debt in 1949 is essentially one of fact. The burden rests on the petitioner to establish this fact by a preponderance of the evidence. Lunsford v. Commissioner of Internal Revenue, 5 Cir., 1954, 212 F.2d 878. The Tax Court was of the opinion

that the evidence consisting of testimony of Grandbush that he did not know whether he was bankrupt or insolvent, but that Eagle was unable to collect the debt in 1949 or since then, which Eagle also testified to, is insufficient to establish the worthlessness of this obligation. We cannot say that this decision is clearly erroneous, Rule 52(a), Fed.Rules Civ. Proc., 28 U.S.C.A., for the mere statement that one was unable to collect a debt, in the absence of further evidentiary facts establishing this conclusion, is an inadequate basis to substantiate the claim of worthlessness. Lunsford v. Commissioner of Internal Revenue, supra.

■ The issue of fraud is an issue of fact to be determined from the entire evidence and circumstances surrounding and entering into the taxpayer's business and all the facts incident to the preparation of the tax returns. Mertens, Law of Federal Income Taxation, § 55.11, and Lee v. Commissioner of Internal Revenue, 5 Cir., 1955, 227 F.2d 181. The burden is upon the Commissioner to prove affirmatively by clear and convincing evidence actual and intentional wrongdoing on the part of the petitioner with a specific intent to evade the tax. Goldberg v. Commissioner of Internal Revenue, 5 Cir., 1956, 239 F.2d 316; Mitchell v. Commissioner of Internal Revenue, 5 Cir., 1941, 118 F.2d 308; and Bryan v. Commissioner of Internal Revenue, 5 Cir., 1954, 209 F.2d 822.

The Tax Court predicates its finding of fraud largely upon there being a vast amount of unreported income in proportion to the amount of income reported, consistent over a five-year period. Eagle's failure to keep adequate books and records, together with his expending certain amounts of cash in purchases of property during the taxable years, was also considered.

In Archer v. Commissioner of Internal Revenue, 5 Cir., 1955, 227 F.2d 270, we

4. Apparently petitioner concedes that he is charged with his share of the income on the venture whether he actually received it or not. See Bell v. Commissioner of Internal Revenue, 5 Cir., 1955, 219 F.2d 442.

concluded the elements of consistent understatement of income, together with accurately reporting deductions while being deliberately evasive as to income, made it impossible to believe the understatements were due to negligence, inadvertence or honest error, and upheld a finding of fraud. But that case had another element which would influence a decision in favor of a finding of fraud, as it was stipulated that the petitioner there had been convicted of various criminal offenses.

In Bryan v. Commissioner of Internal Revenue, supra, we said that the taxpayer's failure to report income is insufficient to establish fraud with intent to evade the tax and that each case must be considered upon its own particular facts. In Bryan, however, partial records were maintained on some enterprises while none were kept on others, this method of bookkeeping being designed to conceal the true income. This fact, combined with seven years of understatements, warranted a finding of fraud.

In Goldberg v. Commissioner of Internal Revenue, supra, we held that the bookkeeping methods there used and the recurrence of improper deductions did not establish fraud, and that no presumption of correctness attached to the Commissioner's findings of unreported income in the determination of the fraud issue.

■ A careful examination of all the positive evidence and inferences to be derived therefrom convinces us that the Commissioner has failed to produce sufficient relevant evidence, under the particular circumstances here, to carry his difficult burden over that narrow border line which persuades the judicial mind that clear and convincing evidence has established fraud with specific intent to evade the tax. Particularly is this true as Eagle was inexperienced in tax matters, prompting him to obtain what he thought was the best available consultant in the community in whom he placed unquestioned faith in these matters. There was no handling of cash, but all business transactions, with inconsequential exceptions, were handled through the bank, with all receipts either being deposited to his checking account or credited as note payments. Eagle cooperated fully with the Revenue Agent during his investigation and gave him everything asked for by way of records, invoices, bank statements, cancelled checks and the like, from which the deficiency was computed. Moreover, Eagle was responsible for instigating the checking of his tax returns by the Revenue Department when it was first brought to his attention that errors may have been committed by the attorney he had employed to prepare his returns.

The Tax Court found that "The information given to the lawyer by Marvin [Eagle] for the purpose of the returns consisted of bank statements, cancelled checks, deposit slips and such other information as the lawyer requested." This is substantially the data from which the Tax Court found the Commissioner determined the deficiencies. These findings, when compared, are more in line with good faith than fraud, and it is not sufficient for the Tax Court, in the face of these findings, to use the phrase, "The evidence as a whole, in clear and convincing fashion, shows a pattern of deliberate omission of a large part of his [Eagle's] income for each taxable year", to base its finding of fraud upon. Large sums of income were unreported, but this does not mean that it was not reflected in the data furnished the attorney who prepared the returns for Eagle. Fraud "is never imputed or presumed, and findings of fraud should not be sustained upon circumstances which at most create only suspicion." Goldberg v. Commissioner, supra. [5 Cir., 1956, 239 F.2d 321]

Under the peculiar circumstances here it would be no more than suspicion to conclude that "the evidence as a whole" justifies the finding that Eagle did not supply his attorney with sufficient data for the preparation of the tax returns and that there was a deliberate omission of a large part of income. The integrity

of the attorney preparing the return has not been attacked.

The original deposit slips before us disclose that certain sums thereon were deposited with the remainder being applied to Eagle's indebtedness to the bank. A great part of the unreported income corresponds to the sums that were applied to payment of the loans. Apparently the attorney preparing the returns did not note these items or appreciate their significance.

Exhibiting striking factual identities in many respects with this case are Davis v. Commissioner of Internal Revenue, 10 Cir., 1950, 184 F.2d 86, 22 A.L.R.2d 967, and Mitchell v. Commissioner of Internal Revenue, 5 Cir., 1941, 118 F.2d 308. In each the Court reached the conclusion that there was insufficient clear and convincing evidence to uphold a finding of fraud, and pointed out in Davis, where the taxpayer handled large sums of money during the years in question and apparently expended large sums in the upkeep of his pretentious home, three automobiles, and sending his children to college, that the petitioner had the right to rely on the person preparing his return, and that the failure to file a correct return did not necessarily constitute fraud. The Commissioner had made the same argument there as is made here, that the reported income was so small in relation to the actual income that the petitioner must have known the returns understated the true income.

In Mitchell the Court pointed out that negligence, whether slight or great, is not equivalent to fraud with intent to evade tax. The personal integrity of Eagle is not attacked and, though his unquestioned reliance on his attorney may have amounted to negligence, we cannot say that this was tantamount to fraud.

The assessment and collection of the deficiency and addition to the tax for 1944 was concededly barred by the statute of limitations unless the return for that year was fraudulently filed with intent to evade the tax. Our decision vacating the Tax Court's findings of fraud absolves the deficiency and penalty for 1944, as well as renders moot the contention of Eagle regarding his opening cattle inventory for that year.

Reversed and remanded with directions to recompute the tax deficiency in accordance with this decision without the fraud penalties.