Sam E. BROADHEAD

v.

James L. ENOCHS, Director of Internal Revenue.

No. 722.

United States District Court
S. D. Mississippi, E. D.

April 25, 1958.

898

de Quincy V. Sutton, O. Winston Cameron, Meridian, Miss., for plaintiff.

Robert E. Hauberg, U. S. Atty., Edwin R. Holmes, Jr., Asst. U. S. Atty., Jackson, Miss., Carrington Williams and M. Carr Ferguson, Attys., U. S. Dept. of Justice, Washington, D. C., for defendant.

MIZE, District Judge.

This is an action by the Plaintiff to recover the sum of $48,759.40 and interest, representing additional income tax, 50% ad valorem penalty for fraud and interest assessed against the Plaintiff by the Commissioner of Internal Revenue for the year 1943. There were six suits filed by the Plaintiff against the Commissioner for each of the years 1940 through 1945, but only the one for 1943 was tried. The Defendant moved for consolidation of all the cases, but due to the crowded condition of the docket in the Southern District of Mississippi, the Court was of the opinion that it would be unfair to other litigants in the court to devote so much time to this litigation to the exclusion of the other litigants and for that reason overruled the motion for consolidation. The Court directed that all the evidence received in the suit for the refund of the taxes for the year 1943 should be considered as evidence in the other cases when they are tried insofar as the evidence in the 1943 suit was applicable.

The Plaintiff, during the period involved, was engaged in the business of cutting, sawing, planing and selling lumber. His principal place of business and sawmill was located at a small place known as Brewer, Mississippi, and in connection with his lumber business he operated a commissary at the mill. Plaintiff filed his income tax reports for the years 1940 through 1945, including his return for the year 1943, the case now involved, and paid the tax as shown on the return. In 1946, sometime during the year, an investigation of the Plaintiff's income tax liability for the years 1940 through 1945 was instituted by the agents of the Internal Revenue Service and after the investigation had begun it was extended to the years 1946 and 1947. His tax liabilities for 1946 and 1947 were litigated in the Tax Court and judgment rendered therein, from which an appeal was taken and the judgment has been affirmed.

During the investigation the Defendant's investigators made a detailed examination of the Plaintiff's income liabilities and recomputed his income for the periods involved by the so-called bank deposits method and other methods, by showing the annual increases in his net worth. The investigation was thorough and complete and based upon the net worth theory and other circumstances, the agents of the Defendant determined that he had filed false and fraudulent returns and made assessments, which taxes the Plaintiff paid and filed these suits to recover back the money so paid. The Plaintiff was indicted for making fraudulent returns and entered a plea of nolo contendere to the indictment, which contained five or six counts.

During the investigation of the Plaintiff by the agents of the Defendant he was interrogated twice under oath and on various occasions the agents had conversations with him and discussions about his increase in wealth and about his business. The Plaintiff did a large amount of his business with cash rather than by checks and his books were inadequately kept, but apparently with no intent to defraud the Government of any income tax. All these transactions took place during the war period when competent help was very difficult to obtain and those people who were engaged in the lumber industry were exceedingly busy. The Plaintiff is an uneducated man, but has good, sound business judgment and has been a success since he started into the lumber business. His wealth increased rather rapidly and he made wise investments. He was trusted

by the Bank and was given almost unlimited credit. He furnished financial statements to the Bank which showed his increased wealth, but the Bank was familiar with his business affairs and assisted him in making some of his financial statements.

One of the main controversies in the present case on trial was the inventory of lumber that he had on hand in December 1943 and which he sold to Earl D. Love. As a matter of true fact, the Plaintiff at the end of 1943 actually had no inventory of lumber, but during the investigation he stated that he did have. This was due to an understanding between the agents and the accountant of the Plaintiff, but at which time the Plaintiff was not present, that there would be a spread back of inventory from the year 1946 through a period of several years in order to allocate the tax over a period of years rather than to have a large tax with the damage and penalties for one year. However, after hearing all the testimony, I am of the opinion that actually he had no inventory of lumber on hand at the end of the year 1943. Since the investigation was completed, Agent Cosby of the Defendant, who participated in the investigation, has died. Likewise, Plaintiff's accountant, Williams, has died. Williams was the accountant who prepared the income tax returns for the Plaintiff and upon whom the Plaintiff relied to prepare his returns. The Plaintiff gave to Williams the information upon which the statements were prepared and believed that he was giving all the information that was needed, and he relied upon this accountant to prepare his income tax returns correctly.

After the investigation was completed, and as a result of the investigation, the Commissioner of Internal Revenue found that Plaintiff's return for the year 1943 was false and fraudulent so as to raise the bar of the 3-year statute of limitation[1] on the assessment and deficiency and justify the imposition of 50% ad valorem penalty for fraud. In making this determination I am of the opinion that the Commissioner of Internal Revenue was in error and that the tax return was not false and fraudulent, that the Plaintiff really and truly believed that it was correct and had no intention whatsoever of defrauding the Government of his income tax. The method of handling the business of the Plaintiff and the circumstances shown by the record in this case at most raises only a suspicion of fraud, but as a matter of fact I am convinced that he had no intent to defraud the Government of any of the income tax whatsoever. The Plaintiff, as heretofore stated, is a shrewd business man, he has good judgment and was an indefatigable worker. He did not keep such a set of books as a sound businessman would keep, as he later, after the years involved here, did set up, and in determining the question of whether he was guilty of fraud or not, I have taken into consideration all the facts and circumstances, including the indictment and his plea of nolo contendere thereon, but as a matter of fact, under the facts of this case, the plea of nolo contendere has very little, if any, weight.

It is not necessary to cite authorities to the effect that fraud is not a thing to be lightly charged or proved. The stigma which follows from it is not to be placed upon a party unless the evidence is sufficient to satisfy the court not by a mere preponderance, but it must rise to the point where it clearly and convincingly demonstrates the truth and the fact of the fraud, and that is particularly true when a long time has elapsed and the memory of parties affected. The proof must be clear and convincing, since it is never presumed. The presumption is against fraud until it is overcome convincingly by one upon whom the burden rests.

Taking the record and all the inferences to be drawn from the testimony, I am of the opinion that the Defendant has failed to prove fraud and I now make

1. 26 U.S.C.A. § 6501.

the following specific findings of fact and conclusions of law:

1. I find the facts as stipulated by the parties, as is shown in the record, and in addition the findings listed below.

2. The Court finds that Plaintiff, Sam E. Broadhead, was a resident citizen of Clarke County, Mississippi, during the entire year of 1943, with his only business being saw milling at Brewer, in said County and State, with a store or commissary run in connection with and at the site of said saw milling operation; that Plaintiff's original federal income tax return for the said calendar year of 1943 was filed on April 8, 1944, pursuant to timely extension duly granted, such return disclosing that Plaintiff was on a cash basis, and disclosing a net taxable income of $5,896.61, upon which Plaintiff paid income tax in the amount of $684.70.

3. The Court finds that Plaintiff's said income tax return for 1943 was made for Plaintiff by W. E. Williams, of Quitman, Mississippi, who has since died, said income tax return being made from Plaintiff's records which were made available to the said Williams; that the integrity of the said W. E. Williams, who also signed the return, is not here questioned. That Plaintiff, whose demeanor and characteristics have been observed by the Court, was and is a good timber, lumber and land trader and dealer, but was and is not a man of accounting and bookkeeping knowledge and understanding; that Plaintiff hired the said W. E. Williams, who was experienced as an accountant in the lumber business, to make his said income tax return, and Plaintiff signed and filed the return as compiled, without question, having confidence in the experience, integrity and knowledge of the said Williams.

4. The Court finds that pursuant to complete investigation and report by revenue and special agents of Defendant, the Defendant caused notice of deficiency to be given to Plaintiff on or about June 26, 1952, with no waiver of the applicable statute of limitation being in effect, the second of two such waivers signed by Plaintiff having expired on June 30, 1949. Said notice of deficiency, known as a "ninety day letter", showed Plaintiff's 1943 net taxable income to be $49,613.24, this amount being $43,716.63 more than the net taxable income indicated on Plaintiff's original income tax return for 1943, with said amount also being $2,220 more that the net taxable income determined by the said examining agents in their report; that this increase over said agents' report resulted from administrative conference between Plaintiff's representative and agents of the Defendant held in New Orleans, Louisiana, in 1952, subsequent to conclusion of the said Revenue Agents' Report, but prior to giving of said notice of deficiency. The Court finds that said increase in the amount of $2,220 in net taxable income was caused by removing a timber depletion allowance of $5,720 on timber purchased by Plaintiff from McRae, the said agents' report allowing this depletion in 1943, but this item being moved to 1944, at the request of counsel for Plaintiff, since the timber was acquired in December of 1943, and not cut until 1944; and the Defendant agreed in said conference that income items totaling $3,500 should be removed from 1943, thus resulting in a net taxable income increase in the amount of $2,220, as aforesaid.

5. The Court finds that Plaintiff did not consent to the deficiency, but that Plaintiff paid the tax thereon, with penalty and interest, on June 26, 1952; that such payment of tax on the deficiency amounted to $24,418.64, payment of fraud penalty amounted to $12,209.32, and payment of interest amounted to $12,159.46, making a total of $48,787.42.

6. The Court finds that claim for refund was then duly filed by Plaintiff, on or about July 9, 1952, and that the Defendant failed to take any action on said claim for a period of more than six months thereafter; whereupon, Plaintiff filed this action against Defendant for refund of the entire amount of the tax, penalty and interest paid, together with interest at the legal rate from date of payment thereof, such action being filed

originally on May 7, 1953, in the United States District Court for the Jackson Division of the Southern District of Mississippi, but being transferred to the United States District Court for the Eastern Division of the Southern District of Mississippi in due course, by proper order of the Court.

7. The Court finds that the gross income of Plaintiff for 1943, as disclosed by the said Revenue Agents' Report, was $199,638.70, but that from stipulations entered into between the parties and other evidence in this action, the gross income of said report has been reduced by the amount of $12,797, so that the corrected amount of gross income in said report is $186,841.70, or $15.14 less than the gross income of $186,856.84 originally reported by Plaintiff in his said income tax return for 1943.

8. The Court finds from the stipulations entered into between the parties and other evidence in this action, that Plaintiff's net taxable income, as disclosed by the said notice of deficiency, was reduced by the amount of $7,427.87, thus reducing the difference between the net taxable income determined by the Defendant and the net taxable income originally returned by Plaintiff to the sum of $36,288.76. The items resulting in said decrease in net taxable income, as disclosed by the said Revenue Agents' Report and by said notice of deficiency, are as follows, to-wit:

A. Decreases:

(1) The Revenue Agents' Report capitalized item of $4,000.00 for cost of machinery bought from Bowlin by Plaintiff in September, 1943; however, machinery was sold and delivered during 1943, and deduction of said amount is allowed for cost of goods sold ...............$4,000.00

(2) Expenses of timber purchases from Latham and Carter, and from Manley, totaling $1,755.00 are removed from 1943, having occurred in calendar year 1942 ...... 1,755.00

(3) Expense of boiler purchase in September of 1943, from H. R. Stone, in the amount of $2,000.00, and sold on same day to Pine Manufacturing Company, originally capitalized by Revenue Agents' Report, is allowed as deduction as cost of goods sold ...................... 2,000.00

(4) Item capitalized as "horses" in amount of $1,564.30 on Revenue Agents' Report is cost of hogs purchased and sold, and deduction is allowed as cost of goods sold ... 1,564.30

Total Decreases: $9,319.30

B. Increases:

(1) Depreciation of $200.00 allowed in Revenue Agents' Report on Bowlin Mill machinery (Item 1 above) should be removed resulting in increase of ................... 200.00

(2) Depletion of timber allowed in said report on Latham and Carter, and on Manley tracts, in amount of, $1,535.00 (see Item 2 above) should be removed, resulting in increase of ................................... 1,535.00

(3) Depreciation in said report allowed on item of "horses" (Item 4 above) should be removed, resulting in increase of $156.43 .............................. 156.43

Total Increases: $1,891.43

Total Decrease in Net Taxable Income $7,427.87

9. The Court finds that in determining Plaintiff's net taxable income for 1943, the Defendant included an alleged increase in Plaintiff's inventory of lumber during said year, in the amount of $29,750, this being the difference in value of alleged inventory of 3,500,000 feet of lumber at end of 1943, and value of alleged inventory of 3,000,000 feet of lumber at the beginning of 1943 as determined by Defendant; Defendant also allowed $7,830.68 less in amounts for depreciation expense than the depreciation originally claimed by Plaintiff in his return; Defendant arbitrarily included $2,500 additional net taxable income, added to cover additional living expenses of Plaintiff, estimated by Revenue Agent Cosby, now deceased. And the Court finds that the sum of these three items exceeds the said remaining difference in net taxable income here involved.

10. The Court finds that such inventory increase determined by the Defendant resulted from a letter signed by the Plaintiff, addressed to Chester A. Mixon, Special Agent for Defendant, being one of the agents of Defendant involved in the investigation, said letter being dated May 14, 1947; but, the Court finds that said letter did not reflect fact and was in no way connected with the said original return made by Plaintiff for the year 1943, said letter being written at the special instance and request of Defendant, to "spread back" a lumber inventory of Plaintiff determined to be present in the middle part of 1946; and that Plaintiff did not understand the purpose or possible consequence of said letter, signing the letter as a step in negotiating and straightening out the difference between Defendant and Plaintiff. As to this inventory, the Court finds as a fact that Plaintiff had no inventory at the end of 1943, and that inventory at the beginning of 1943 was inconsequential.

11. The Court finds that the allowance of $11,104.25 by Defendant in the Revenue Agents' Report, as amounts for depreciation expense, was not based upon any determination by Defendant that Plaintiff's claimed depreciation of $18,934.93 was excessive, but that Defendant's said allowance was based entirely upon memorandum made by accountant J. Donovan Ready, of Meridian, Mississippi, after conference with investigating agents Mixon and Peyroux, at which conference Plaintiff was not present or represented; and the Court finds that the depreciation of $18,934.93 originally claimed by Plaintiff in his income tax return of 1943 was reasonable. The Court finds further that said memorandum, appearing as Exhibit 2 to the deposition of the said J. Donovan Ready, which is Exhibit 31 for Defendant in this Civil Action, was also the basis for the inventory "spread back" figures used in the said lumber inventory letter by Plaintiff to agent Mixon, dated May 14, 1947, mentioned above.

12. The Court finds as a fact that Plaintiff did not conceal income or report excessive deductions or expenses in the calendar year of 1943, with the intent to defraud or evade income tax.

13. The Court finds that an indictment was returned against Sam E. Broadhead for tax evasion for the years 1942–1945, inclusive; that Plaintiff, Sam E. Broadhead, then entered a plea of nolo contendere to said charge, before his records had been audited by an accountant or other person specialized in questions of accounting and taxation; and that Plaintiff was fined $2,000 upon conviction on said indictment and plea, and is to be considered in this proceeding, along with all the other evidence, but has very little weight.

The Court concludes as a matter of law that Plaintiff is entitled to the entire refund sought, in the amount of $48,787.42, together with interest at the legal rate from date of payment, the Defendant having failed to prove that Plaintiff owed any income tax deficiency for the year 1943 due to fraud, with intent to evade income tax.

An order may be drawn in accord herewith.