B. B. CARTER, Appellant,

v.

Ellis CAMPBELL, Jr., District Director of Internal Revenue, Appellee.

No. 18302.

United States Court of Appeals
Fifth Circuit.

Dec. 6, 1960.

---

**3.** Melton v. Taylor, 10 Cir., 276 F.2d 913, 914.

Wentworth T. Durant, Robert J. Hobby, Dallas, Tex., for appellant.

Lloyd J. Keno, Lee A. Jackson, Dept. of Justice, Washington, D. C., William B. West, III, U. S. Atty., Fort Worth, Tex., W. E. Smith, Asst. U. S. Atty., Dallas, Tex., Charles K. Rice, Asst. Atty. Gen., for appellee.

Before RIVES, Chief Judge, and CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

This appeal involves the fifty per cent civil fraud penalty in the amount of $11,924.60 added to the taxpayer's (appellant here, plaintiff below) federal income tax for the year 1946 and paid by him. The district court, after hearing the evidence, entered its judgment dismissing the complaint. The questions presented upon the appeal are: (1) whether this Court has jurisdiction of the appeal in view of the taxpayer's failure, according to the contention of appellee, to file notice of appeal from the judgment by the district court (the facts related to this question will be set forth infra); and (2) whether the district court, having imposed upon the Government the burden of proving fraud by clear and convincing evidence, correctly found and held upon the entire record that the taxpayer's return was false and fraudulent with intent to evade tax, and that part of the deficiency was due to fraud with intent to evade tax, within the meaning of § 293(b) of the Internal Revenue Code of 1939.[1]

Taxpayer's 1946 income tax return showed a tax due of $2,852.29, which he paid. A subsequent audit of this return by the Internal Revenue Service revealed that the taxpayer had understated his net income for 1946 in the amount of $82,127.81, and the Commissioner determined that the understatement was at least partially the result of fraudulent concealment of income. The taxpayer paid an asserted deficiency of $23,849.21 and a civil fraud penalty of $11,924.60. He filed a claim for refund, which was denied, whereupon he brought this action.

At the first trial of the case before a judge other than the one sitting in the case which is now before us, the court found that the taxpayer was not entitled to a refund of the deficient taxes or the fraud penalty. The taxpayer appealed only from that part of the decision which upheld the fraud penalty. The existence of the deficiency itself is, therefore, judicially acknowledged. This Court reversed the judgment of the district court with respect to the fraud penalty, and ordered that the case be retried on that issue. Carter v. Campbell, 1959, 264 F.2d 930. Again, the district court has determined that the taxpayer was not entitled to a refund of the fraud penalty. Its written opinion, a portion of which is copied in the margin,[2] is reported in 179 F.Supp. 359–362.

---

1. See 26 U.S.C.A. § 293.
 The statement of questions presented, as well as of the facts generally, is taken largely from appellee's brief.

2. "In this trial the Government's case of fraud centers around two admittedly unreported items of income which took the form of checks from the Santa Fe Grain Company to the taxpayer totalling $20,752.69. In June of 1946 the taxpayer agreed to purchase a tract of land for $6,400. To obtain the money to purchase the tract the taxpayer sold to the Santa Fe Grain Company all of his wheat which was left in the company's elevator at that time. At the taxpayer's request the grain company paid $7,612.00 therefor in the form of two consecutively numbered checks, both of which were issued on the same day. One check was in the amount of $1,212. and was deposited in the taxpayer's bank account in the customary manner; the

The handling by appellant of these two checks convinced the trial court that, because they were handled in a way other than the usual way in banking and commercial practice and even in the practice of the taxpayer, fraud was to be imputed. It reasoned further that the course pursued by appellant in handling these two items showed that he was "thinking to a purpose something out ahead," and that he was "thereby placing another link in a *possible chain* of concealment and making it more difficult for his accountant to include the income in his return even had he been instructed to look up such transactions." [Emphasis added]; that the failure of taxpayer to follow the "ordinary course" by which he would have "had a record which he might have used not only in tax matters but which would also have served as a business record;" and that, thereby, "He obliterated the record by having the check applied directly against the bank loan without running it through his bank account."

The conclusion of the court below from the taxpayer's outlined actions was thus stated:

"We cannot read the mind and intent of a person but we may determine his intention from his acts and doings. Was the conduct of the taxpayer such as to show by the preponderance of all the facts and circumstances that he was seeking to conceal from the Government certain elements of his income in order to evade the tax thereon. We think the record is sufficient to show such an intent and that he was knowingly and willfully concealing his income."

The Jurisdictional Question.

The "suggestion" by appellee—buttressed by extensive argument—that this

Court is without jurisdiction, because there was not a timely filing of the notice of appeal should be dealt with at this point inasmuch as it lies at the threshold of the case. The contention is that appellant gave his notice of appeal on the assumption that the written opinion of the trial court was in fact its judgment; and he did not file an additional notice of appeal after the entry of the formal judgment whose form both parties approved. A brief additional statement of facts, relating to the jurisdiction question is necessary.

October 26, 1959, the court below filed with the clerk and served on the respective counsel its written opinion, which concluded with these words: [3]

"We feel that the Government has discharged its burden to show these elements by clear and convincing evidence and therefore we hold that the fraud penalty was properly assessed and collected, and that the taxpayer is not entitled to a refund of the amount paid." Nothing was there said about the preparation or entry of a judgment, and the clerk noted on his docket merely that the opinion had been filed and that notice had been given to the attorneys.

December 14, 1959, no judgment having been entered by the clerk or presented for entry by the attorneys for appellee, the appellant filed and served his notice of appeal to this Court "from the final judgment entered herein on the 26th day of October, 1959," paying the clerk, at the same time, the filing fee required.

December 23, 1959, fifty-eight days after the trial judge had signed the opinion, the appellee presented to the court a judgment, bearing the approval of appellant's attorney as to form, in which it was "Ordered, that the defendant have

---

second check was in the amount of $6,-400, the exact amount of the purchase price of the land, but was not deposited. This latter check was used to purchase a cashier's check from the bank which was in turn used to pay the purchase price of the land.

"The second item omitted from income was a $14,352.69 check which was from the Santa Fe Grain Company for the

sale of wheat. This check was never deposited in the taxpayer's bank account, as was customary, but was instead credited directly against an outstanding loan from the bank. These two unreported grain sales almost equalled in amount the income from reported sales during that year of $23,820.95."

3. 179 F.Supp. 362.

judgment dismissing the complaint with costs to be assessed against the plaintiff."

Within the sixty day period allowed for appeal and subsequent to the entry of this order of December 23rd, the following actions were taken:

January 8, 1960, appellant's attorney served on appellee's attorney an application for an extension of fifty days for filing and docketing the record on appeal in this Court, and, on January 13th, the court below signed and entered an order so providing.

February 12, 1960, appellant procured an order to be signed by the court below providing that the original exhibits in the trial before it be transmitted to this Court.

February 17, 1960, this Court acting through the Chief Judge, upon a motion and affidavit filed by appellant,[4] entered an order granting leave to the appellant to prosecute his appeal to this Court upon the original record.

 On the assumption that appellant's notice of appeal filed December 14, 1959 was a nullity and that the time for appeal began to run only when the formal judgment was entered December 23rd, we think that the actions taken within sixty days from December 23rd are sufficient to constitute timely notice of appeal. In Des Isles v. Evans, 5 Cir., 1955, 225 F.2d 235, 236, we held that appellant's application for authority to appeal *in forma pauperis* was sufficient to constitute notice of appeal under Rule 73(a), F.R.Civ.P., 28 U.S.C.A., stating:

"The rules have for their primary purpose the securing of speedy and inexpensive justice in a uniform and well ordered manner; they were not adopted to set traps and pitfalls by way of technicalities for unwary litigants * * * Therefore, substantial compliance with the rule is sufficient, and appellant's petition for leave to appeal in *forma pauperis* adequately met the requirements of Rule 73(a).

"The motion to dismiss the appeal is overruled."

We followed that case in Roth v. Bird, 5 Cir., 1956, 239 F.2d 257, 259, holding again that the petition for leave to appeal in *forma pauperis* adequately met the requirements of this rule. In Tillman v. United States, 5 Cir., 1959, 268 F.2d 422, 423, the appellant gave his notice of appeal after the expiration of the time provided under the Federal Rules of Criminal Procedure, 18 U.S.C.A.; but we extended the protection of the above holding to him and ruled that his application within the time limit for leave to appeal in *forma pauperis* rescued him from forfeiture of his right to appeal. In that decision, we referred to a number of additional authorities, including our case of O'Neal v. United States, 5 Cir., 1959, 264 F.2d 809, and the authorities collected in the majority and dissenting opinions.

In United States v. Stromberg, 5 Cir., 1955, 227 F.2d 903, 904–905, we declined to follow the strict rule obtaining in some circuits, but held that technical irregularity would not destroy the right

---

**4.** The motion contains this language:

"Appellant, B. B. Carter, by his attorney, Wentworth T. Durant, moves the Court for an order permitting him to prosecute his appeal from the judgment entered herein upon the original record in such case and for leave to file typewritten briefs herein, and asks the Court to waive its requirements under Rule 23, [28 U.S.C.A.] relating to the printing of the record. * * *"

The affidavit showed that appellant was unable to pay the costs of printing the record and briefs and unless he should be permitted to prosecute the appeal upon the original record and typewritten briefs, "such appellant will be unable to proceed with this appeal * * *"

It is not conceivable that these documents did not advise all concerned, this Court, its clerk, the judge and clerk of the court below and counsel for the Government, that appellant desired and intended to appeal from the judgment dismissing his complaint, or that anybody was misled, or that any possible injustice was done. The actions taken within the sixty day period made appellant's intention clearly articulate.

to appeal where the parties had proceeded on the assumption that the appeal had been taken properly, saying: "This Circuit is committed to the more liberal rule that, where it is obvious that the overriding intent was effectively to appeal, we are justified in treating the appeal as from the final judgment." [Citing cases.]

In our opinion, appellant's application to this Court for leave to proceed upon the original record and our order granting such leave constitute adequate notice of appeal. Especially is this so when, as here, they are supplemented by the order of the court below, rendered upon notice, extending the time for filing and docketing the record on appeal; and by the further order of the court below that the original exhibits before that court be transmitted to us in connection with the appeal.[5] Even, therefore, if the notice of appeal filed December 14, 1959 be ignored entirely, the foregoing actions taken within the time limit for appeals and subsequent to the entry of final judgment constitute substantial compliance with the rules. And having noticed the point suggested and urged by the appellee, we hold that the case is properly before us.[6]

5. In addition, a member of this Court entered a further order extending the time for filing the record on appeal, and both the appellant and appellee filed their designations of the record on appeal. Appellee's designation served and filed April 4, 1960, contained these words: "the defendant-appellee * * * in addition to those portions of the record designated by the plaintiff-appellant for inclusion in the record on appeal * * *, designates for inclusion in such record on appeal the following portions of record and proceedings in this action * *'

6. While we base our holding on the foregoing considerations, we think appellant's argument is valid upon his contention that, under the facts of this case, the notice of appeal filed by him December 14, 1959 was adequate to satisfy the requirements of F.R.Civ.P. The "opinion" of the trial court concluded with a categorical decision of the only question before it: " * * * the fraud penalty was properly assessed and collected, and that the taxpayer is not entitled to a refund of the amount paid." No provision was there made for judgment to be entered according to the opinion, such as was done in the cases upon which appellee relies. Everything which the case involved was decided in the written opinion except the award of costs and this item is covered by Rule 54(d), F.R.Civ. P., "costs shall be allowed as of course to the prevailing party unless the court otherwise directs * * *."

Under the language of the opinion signed by the trial judge, under Rule 58, F.R.Civ.P., the clerk was obligated forthwith to enter a judgment, with the proviso that the entry should not be delayed for the taxing of costs. If something more than the opinion was contemplated here, the clerk was delinquent in the performance of the purely ministerial act required of him by Rule 58, and the rights of the parties ought not to be affected thereby unless Rule 79 is to be considered as a sort of "sacred cow."

We think the clerk was warranted in assuming that the signed opinion was adequate to constitute a judgment and that this was probably his attitude. Certainly the appellant was in no way delinquent. The appellee waited until a few days before the time for appeal from the formal document filed by the court on October 26th would expire before presenting a judgment to be entered. We are struck by the force of appellant's argument that it would be inherently unjust to permit appellee to profit by such inexcusable delay.

Every act taken by the court below, by this Court and by both litigants indicated clearly that everyone thought that proper appeal had been taken from the judgment that appellant was not entitled to recover any part of what he sued for. Under all of the circumstances revealed by this record, it seems to us that it would be a complete betrayal of the spirit and letter of the rules to deny appellant his right of appeal. Cf., besides the rules above cited, 6 Moore's Federal Practice, pp. 3502–3504, including the quotation from the report of the Rules Committee; United States v. F. & M. Schaefer Brewing Co., 1958, 356 U.S. 227, 78 S.Ct. 674, 2 L.Ed.2d 721; Dickinson v. Petroleum Conversion Corp., 1949, 338 U.S. 507, 70 S.Ct. 322, 94 L.Ed. 299, including the dissenting opinion; Erstling v. Southern Bell Telephone & Telegraph Co., 5 Cir., 1958, 255 F.2d 93; Scott v. Gearner, 5 Cir., 1952, 197 F.2d 93, 94; Crump v. Hill, 5 Cir., 1939, 104 F. 2d 36; Kanatser v. Crysler Corp., 10 Cir., 1952, 199 F.2d 610, certiorari denied 344 U.S. 921, 73 S.Ct. 388, 97 L.Ed. 710.

## On the Merits.

It will be seen that the court below, as it did in the former trial, based its findings of fraud largely on admitted facts concerning the handling of these two items as they were developed by the evidence before the court on each of the trials. We pointed out before that, as a farmer, taxpayer was not required to keep books, and that he did not in fact keep books. Yet the appellee contends, and convinced the court below, that fraud should be assumed because appellant's records, which he was not required to keep, were incomplete and did not in themselves tell a full story of each of the transactions involved. Without any attempt to set forth or analyze taxpayer's extensive operations in 1946 showing gross income from cattle sales of $99,555.83, gross income from all operations of $131,480.26, monies borrowed by taxpayer of over $120,000 from the First State Bank of Stratford, the appellee picks out these two items alone as indicative of fraud because of the manner in which they were handled by appellant through the bank.

In our opinion on the first appeal,[7] we posed the question presented by the appeal thus:

" * * * did Taxpayer purposefully conceal these grain items so that they would not be reported as income upon which a tax would be payable, or was the omission by Russell due to mere neglect or error, either because Taxpayer failed to inform his attorney-accountant of the facts or because of error in the receipt, consideration and use of the Taxpayer's information by Russell's office?"

The question remains the same here, and the court below, on this trial and on essentially the same testimony, reached the same conclusion. The court referred to "another link in a possible chain of concealment." In thus revealing what was in its mind, the court indicated that possibilities were playing a part in its reasoning towards the end result reached by it in this case that appellant "obliterated the record" made by the bank in connection with the two transactions which form the base of the fraud penalty involved. We do not think that either transaction, or both of them together, fastened upon appellant the just charge that he obliterated anything.

As to the larger item, the $14,352.69 check applied by the bank to taxpayer's note, under the undisputed facts in the record before us, the answer here must be the same as that we made in Eagle v. Commissioner, 5 Cir., 1957, 242 F.2d 635, 638. Eagle never made out any deposit slips, but relied upon his friends, the officers of his bank, to apply monies delivered by him to the bank to his checking account or to the payment of indebtedness as to them seemed best. Large amounts of income were, therefore, omitted from his tax returns over a period of years, but we held that such a showing did not convict Eagle of fraud. Exactly the same situation existed here, except that Price, the bank president with whom appellant did business, was not only appellant's close friend and business adviser, but was personally lending appellant money and was engaged in joint ventures with appellant in his farming and ranching operations. Insofar as the conclusion of the court below as to this item is based upon the way the $14,352.69 item was handled, the case is controlled by the Eagle case.

We think also that the reasoning of Eagle controls the records evidence as it relates to the smaller item of $6,400. Not required to keep any records, the appellant, by his course of handling both items, made a complete and easily discoverable record, which could be traced by anyone caring to do so. Not only was this true, but the books of the grain company and its cancelled checks furnished an easy clue to the amount of money which appellant was paid by the grain company, and the records of the bank showed clearly what was done with the money. Without examining the author-

7. 264 F.2d 935.

ities or analyzing the facts further, we hold that, under Eagle and the reasoning employed and the authorities therein discussed, the records obtained from the books of the grain company, and of the bank, and of the handling of these items by appellant, do not make out a case of fraud.

The appellee contends that the bare records themselves and the way the two transactions were handled by appellant are invested with weight and significance by testimony given by Russell, the accountant-lawyer who was recommended to taxpayer by the bank president Price (who was not living at the time of the trials) and Russell's employees. In its written opinion, the trial court made reference to this testimony at one or more places.[8] It is difficult to perceive how appellant's omissions over a number of years compared with those of Russell's

other clients would be relevant or probative in this case. The appellee does not so argue. On the question of the credibility and probative value of the testimony of Russell and his employees referred to in the second paragraph of Note 8 supra, the appellee recognizes that these conclusions from the opinion of the court were based upon inferences drawn by these witnesses, rather than from statements of fact made by Russell and his employees.[9]

From these quotations from appellee's brief it is clear that the positive testimony of appellee, cf. Smith v. Dunn, 5 Cir., 1955, 224 F.2d 353, and cases there cited, was not contradicted by probative evidence of Russell or his employees. All they could do was to formulate the inference that, although they did not recall whether appellee gave them information concerning the two items, if

8. 179 F.Supp. at page 362: " * * * Furthermore, the testimony of Mr. Russell that this taxpayer had more omissions from income over a five-year period than any other client for whom he prepared returns suggests something more than carelessness.
" * * * In this case there is credible testimony from Russell and his employees, including Mmes. Hancock and Hisaw, and Messrs. Underwood and Boomer, that information concerning the unreported income was not furnished for the preparation of the taxpayer's return."

9. These quotations from appellee's brief support this statement:
"The testimony of Russell and his employees was that they prepared the returns from the bank statements, cancelled checks, deposit slips, and such other information as the taxpayer brought in. *They had no doubt that the taxpayer knew that these were the sources of their information*, and the taxpayer, although denying at one point that he knew this, at another point admitted that he knew Russell would have only such information as the taxpayer provided. The taxpayer said that he gave Russell's office information of all checks he received, but Russell and his employees testified that *if the taxpayer had notified them of these two checks a memorandum of that would have been put in his file.* No such memorandum existed. * * *

*"He had no doubt in his own mind that the taxpayer understood this * * * It was Russell's testimony that if the taxpayer had brought in other oral information, either Russell himself or Mr. Hancock*, a public accountant employed by Russell since 1927, *would have received it. * * *

"The taxpayer attacks the testimony of Walter Russell on the grounds that Russell informed on him while employed as his accountant and subsequently advised Carter to plead guilty to a criminal tax evasion charge. With respect to Russell's rule in the criminal proceedings, this Court has already had occasion to consider the matter in Carter v. United States, 224 F.2d 563, vacated and remanded, 350 U.S. 928 [76 S.Ct. 301, 100 L.Ed. 811]. * * * Upon the taxpayer's petition for certiorari, the Solicitor General confessed error on the ground * * * that the taxpayer *may* have received legal advice in that proceeding affected by an interest adverse to his own. Whatever the propriety of Russell's conduct in representing the taxpayer or recommending that his colleague, Arthur Glover, represent him in that action, for purposes of the present case Russell was only a witness whose testimony could properly be weighed by the District Court in the light of all the surrounding circumstances. * * * *"* [Emphasis supplied.]

he did so, memoranda would have been made and the items would have been reflected in their file. As definitely discounting the dependability of this type of testimony, we pointed out, when the case was before us in 1959 (264 F.2d 934), that a deposit slip covering cattle sales amounting to nearly $7,000, which appellant had admittedly furnished Russell and which was found in the latter's files, had not been reflected in appellant's income tax return for that year.

The stress put upon Russell's testimony in appellee's argument and the extent to which the trial court relied upon it warrant a brief look into another litigated case growing out of the same facts as those involved here and based, in large part, upon the same testimony. Prior to the beginning of the litigation before us, appellant moved, in a criminal proceeding brought against him, that he be allowed to withdraw the plea of guilty which had formerly been entered by him. The motion came on for hearing before the same judge who entered the judgment attacked on this appeal. The evidence and entire record in that trial is before us, and for brevity we quote a portion of the opinion of the trial court as summarizing the important portions of that trial which have relevance in the present case.[10]

10. "The defendant B. B. Carter moves the Court to allow him to withdraw a plea of guilty entered and upon which sentence has heretofore been passed * * the movant, B. B. Carter, accompanied by his attorneys, Walter G. Russell and Arthur Glover, appeared in court * * and entered a plea of guilty to an information filed charging him with willfully and unlawfully attempting to evade a large portion of the income tax due and owing by him to the United States of America. * * *

"The defendant Carter, after a lapse of more than three years, now comes to court and says that he was caused to enter the plea of guilty by the fraudulent representations made to him by his attorneys * * * and that he was not guilty as charged and should not have entered a plea of guilty but for being misled by those who presented his case in court. * * *

"The defendant Carter kept no books; his bank books, his cancelled checks, his deposit slips and his memory are the source of information from which the reports were made. On one occasion the banker Price in conversation with accountant Russell called Russell's attention to gossip among the employees of his bank in which 'some of the young lady employees in the bank had observed that Carter, with all the money he was handling, was not paying any larger income tax checks than they were paying. Russell says he thought about this some time and on one occasion in conversation related it to the United States Revenue Agent Dubbs. * * *

"Defendant Carter with newly employed counsel says that the purpose of Russell was a deep laid scheme to get his client Carter into trouble for the purpose of representing him and collecting a large fee. Russell says that he worried about the matter and decided it was his duty to report the matter to the government, * * *

"On the question of actual fraud, the Court must consider the deductions sought to be made that Russell reported his client for personal gain in order to collect a large fee. We must consider further Russell's statement that he considered it his duty. Then there may have been other elements that entered into the mind of Russell, such as fear of public opinion resulting from gossip, that induced him to report his client to the agent. * * *

"Some year or more went by and another agent of the government, becoming possessed of the statement that had been made to Dubbs, made an investigation of the income and tax liability of the defendant. * * * Instead of being delivered to the government office as desired, by some error they [reports and summaries made by the revenue agents touching Carter's tax liabilities] were delivered to the mail box of the defendant Carter. He got it out and found it to be a report touching on his income tax status. One of the first passages in the report advised him that the report stemmed from information originally obtained from his Accountant, Walter G. Russell. * * *

"Carter and Russell agreed that it would now be necessary to employ counsel to defend him against the criminal charges brought by the government. After discussion it was agreed between him and Carter that Russell's firm would undertake the defense. * * * A fee

Based in part upon the facts and conclusions set forth in the footnote, the judge denied the motion to withdraw the plea of guilty to the information, which, incidentally, involved other years besides the one here involved. The basis of the judge's decision was mainly that Carter had waited too long to bring the matter up; but he based it also upon his conclusion that both Carter and Russell "equally understood everything they had done and that was being done."

In a per curiam opinion this Court affirmed [11] the judgment denying Carter the right to withdraw his plea of guilty and the Supreme Court granted certiorari and by a per curiam order vacated and remanded that judgment to the district court. [12] From the quotation from appellee's brief supra, it appears that one of the reasons behind the Supreme Court's action was doubt as to whether Carter was represented by a disinterested attorney.

> of $10,000 was arranged * * * In the ultimate division of the fee, Russell received for his part one-half of the total.
>
> "In reporting Carter to the United States Revenue Officer, we are not prepared to say that Russell had in mind a long range scheme to defraud and ultimately collecting the fee that he finally received. We do not think that it can thus be established by circumstantial evidence that the report made to the revenue officer, although unethical as it may have been, can be sustained under the rules of circumstantial evidence to establish actual fraud. * * * But having turned in his client to be prosecuted by the government because he felt it was his duty to do so, we cannot understand how he felt free to accept employment to defend him.
>
> "* * * He [appellant Carter] argued long and understandingly with his counsel on the better course to pursue and finally agreed with them to enter a plea of guilty and throw himself upon the mercy of the court."

11. 224 F.2d 563.

12. 350 U.S. 928, 76 S.Ct. 301, 100 L. Ed. 811.

13. Appellee relies on two other items of evidence which the court below considered as having some persuasive force. One was the supposed statement of ap-

Among the exhibits before us is certified copy of an order entered by the district court on March 1, 1956 ordering that Carter be permitted to withdraw his plea of guilty and that the clerk repay to him the $10,000 fine he had theretofore paid. These undisputed facts reflect the estimate placed upon Russell's actions by the Supreme Court of the United States and by the district court. His testimony as a witness is so discounted, therefore, as to render it a very doubtful basis for adjudging fraud against the appellant under all of the facts appearing in this record. [13]

For these reasons, after having studied and considered the entire evidence, we are left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 1948, 333 U.S. 364, 365, 68 S.Ct. 525, 92 L.Ed. 746. [14] The judgment

> pellant made some fourteen years before that a man was "a damned fool for paying it [income taxes] at all." Nobody contends that this was anything but a facetious remark made in the presence of appellant's friends. The testimony concerning it is, under all the circumstances, unreliable even if it had been said in seriousness.
>
> The other relates to the retention by appellant of copy of a report which came to him in due course of mail. This was the report of the revenue agents, but it came into appellant's hands legitimately and it contained the startling evidence that he had been "turned in" by his accountant and attorney. We do not consider his retention of this report on that ground or on any other ground as an admission of guilt of willfully failing to file a correct income tax return.

14. Cf., in addition to our former decision, 264 F.2d 930, and the many authorities therein cited, particularly the Eagle case, the well reasoned opinion of Mize, District Judge, D.C.S.D.Miss.1958, in Broadhead v. Enochs, 162 F.Supp. 897; and the able opinion of Clayton, District Judge, D.C.S.D.Miss.1959, 179 F.Supp. 876, in the companion case of Broadhead v. Enochs. These opinions are given added weight by the fact that the government took no appeal from the former decision, and abandoned the appeal in the latter.

of the lower court is, therefore, reversed and the cause is remanded for the entry by the district court of a judgment in favor of appellant B. B. Carter for the amount paid by him as a fraud penalty, together with legal interest.

Reversed and Remanded with directions.